NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1998
_____

GARY S. HARRIS,
                    Appellant

v.

MICHELE R. RICCI; ROBERT DOLCE;
PAUL MARKS; LYDELL SHERRER;
GEORGE W. HAYMAN; LARRY GLOVER;
MICHAEL PELADINO; SALVATOR MANISCALCO
_____

No. 14-2102
_____

GARY S. HARRIS

v.

MICHELE R. RICCI; ROBERT DOLCE; PAUL MARKS;
LYDELL SHERRER; GEORGE HAYMAN; LARRY GLOVER;
MICHAEL PELADINO; SALVATOR MANISCALCO,

Michele R. Ricci; Robert Dolce; Salvator Maniscalco,
                                        Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-08-cv-06282)
District Judge:  Honorable Dickinson R. Debevoise
_____

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2014

_____

Before: SMITH, HARDIMAN and BARRY, <u>Circuit Judges</u>

(Opinion Filed: December 30, 2014)
_____

OPINION[*]
_____

BARRY, <u>Circuit Judge</u>

Gary Harris, an inmate in the custody of the New Jersey Department of Corrections ("NJDOC"), appeals the District Court's order denying compensatory damages on his claim that prison officials violated his procedural due process rights in connection with a disciplinary hearing. Appellee and Cross-Appellant Salvatore Maniscalco, the officer who presided over Harris's hearing, seeks to vacate the District Court's orders granting summary judgment and nominal damages to Harris on his due process claim, granting $300 in attorney's fees to Harris's appointed counsel, and sua sponte ordering injunctive relief. We will affirm in part and reverse in part, and remand for entry of an order capping the attorney's fees at $1.50.

I.

Almost precisely six years ago, Harris filed a complaint in the U.S. District Court alleging various claims under 42 U.S.C. § 1983. Over these six years, the District Court has devoted an extraordinary amount of attention to the case, issuing numerous orders and opinions, the latest one twenty-six pages in length. Although the issues raised were

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

not, at first blush, that difficult, the parties were not particularly helpful, as the Court would occasionally note in its opinions, albeit in its usual graceful style. Because of the familiarity of the parties, for whom we primarily write, with all that has gone before, we move directly to the issues raised on appeal.

In an opinion and order filed on June 11, 2013, and as relevant here, the District Court held that Harris, then represented by pro bono counsel, was entitled to summary judgment on his procedural due process claim because it was undisputed that before and during the disciplinary hearing at issue here, Maniscalco failed to allow him to review the letters (written by Harris) that were the subject of the hearing. The Court held, however, that Harris was entitled only to nominal damages of $1.00, because he conceded that he wrote the letters and also admitted to separate charges which likewise gave rise to the same sanctions. Thus, the Court held, "he could have been sanctioned to the very same sanction that was imposed upon him." (App. at 30.) Although acknowledging that Harris's victory was a "technical" one involving "long settled" legal issues, the Court "conducted a sua sponte inquiry into the amount of attorney's fee due" to Harris's appointed counsel, and awarded $300 in attorney's fees. (App. at 37, 48.) Both parties (Harris resuming his pro se status) filed motions for reconsideration. Harris sought reconsideration of the Court's decision not to award him the $1,900,000 in compensatory damages he had sought, while Maniscalco sought a reduction of the attorney's fee award to $1.50, in light of the Prison Litigation Reform Act ("PLRA") cap on such fee awards in prisoner § 1983 litigation.

3

In an opinion and order filed on March 28, 2014, the District Court rejected Harris's claim for additional damages and likewise rejected his attempts to raise new claims and revive dismissed claims. It likewise rejected Maniscalco's claim for reduction of the fee award, holding that the cases cited by Maniscalco applying the PLRA's fee cap to nominal damages awards were "[n]either binding nor persuasive" and "cannot be harmonized with [42 U.S.C. § 1997e(d)] itself and the rules of statutory construction." (App. at 65.) The Court then observed that the PLRA cap is not applicable where a plaintiff has obtained injunctive relief, and noted that "technically, [Harris] is entitled to injunctive relief in the form of a procedurally proper curative administrative [hearing]." (App. at 66-68.) The Court sua sponte amended its prior order to grant Harris "additional relief in the form of a procedurally proper curative hearing." (App. at 68.)

This appeal and cross-appeal followed. Harris, pro se, argues that he is entitled to compensatory damages. Maniscalco opposes Harris's appeal and cross-appeals, arguing that the Court erred in granting summary judgment to Harris because his claim was not cognizable under § 1983, in concluding that Harris could recover more than $1.50 in attorney's fees, and in sua sponte ordering a curative hearing.[1]

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review an order granting summary judgment de novo, "applying the same test on review that the District Court should have applied." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011) (quotation marks and citation omitted). "We review a district court's award of fees for abuse of discretion," exercising plenary review over the legal standard used to calculate the award and reviewing the court's factual determinations for clear error. *United Auto. Workers Loc. 259 Soc. Sec. Dep't v. Metro Auto. Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007). "We review a denial of a motion for reconsideration for abuse of discretion, but we review the District Court's underlying legal determinations de novo and factual

4

II.

<u>Harris's Appeal</u>

On appeal, Harris contends that the District Court erred in granting him only nominal damages. He argues that the faulty disciplinary hearing led to his unlawful transfer to the Security Threat Group Management Unit ("STGMU"), where he "suffered an atypical and significant hardship in relation to ordinary incidents in prison life," entitling him to compensation. (Appellant's Br. at 4.)

The District Court properly dismissed this claim in connection with its screening of Harris's complaint pursuant to 28 U.S.C. § 1915A. The Court correctly held that Harris failed to set forth adequate allegations that the conditions at STGMU presented atypical or significant hardship such that placement there could give rise to a due process claim. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). We have elsewhere held that transfer to STGMU does not give rise to a protected liberty interest under the Due Process Clause, observing that, "[a]lthough inmates who are transferred to the STGMU face additional restrictions . . . transfer to the STGMU does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life." *Fraise v. Terhune*, 283 F.3d 506, 522-23 (3d Cir. 2002).

Moreover, Harris acknowledges that he received a separate hearing before the STGMU Hearing Committee regarding his security threat group ("STG") affiliation, and that the Committee reached its decision based not only on the result of his prior

determinations for clear error." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir. 2010).

5

disciplinary hearing, but also on its findings that he possessed an STG tattoo and was an admitted member of the Crips. (*See* Appellant's Br. at 7.) As the District Court found and as Harris failed to challenge in his opening brief, Harris "concede[d] that he wrote the letters utilizing the [STG-related] words at issue," and thus "could have been sanctioned to the very same sanction that was imposed upon him," had a procedurally proper hearing been held. (App. at 30.) Because Harris failed to state a claim that he was transferred to STGMU in violation of his constitutional rights, and failed to establish that the procedural due process error at the disciplinary hearing gave rise to actual injury, the Court properly dismissed his transfer claim and correctly awarded only nominal damages on his procedural due process claim.

### III.

Maniscalco's Cross-Appeal

A.      Whether Harris's Claim was Cognizable under § 1983

Maniscalco contends, for the first time on appeal, that Harris's procedural due process claim is barred by *Edwards v. Balisok*, 520 U.S. 641 (1997), in which the Supreme Court held that where an inmate complains of a procedural defect in a disciplinary hearing process that would, if established, necessarily imply the invalidity of resulting sanctions that included the loss of commutation or "good time" credits, such claim is not cognizable under § 1983. We have held that "[i]t is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." *Tri-M Grp., LLC*

6

*v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (internal quotation marks and citation omitted). We retain discretion, however, to review arguments raised for the first time on appeal. *Id.* Maniscalco acknowledges that he failed to raise this issue before the District Court and offers no explanation as to why it was not raised.[2] But even if we were to exercise our discretion to consider the argument, we would find it unavailing.

In *Heck v. Humphrey*, 512 U.S. 477, 483 (1994), the Supreme Court confirmed that a prisoner's claim for damages that calls into question the lawfulness of his conviction or confinement is not cognizable under § 1983. The Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. If it would, the complaint must be dismissed unless the plaintiff "can demonstrate that the conviction or sentence has already been invalidated." *Id*.

In *Balisok*, 520 U.S. at 643, the Supreme Court addressed the related issue of "whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983." In that case, the inmate challenged only the *procedures* used to deprive him of good-time credits – he did not contend that the deprivation of good-time credits was unlawful, distinguishing his case from *Heck*. The Court acknowledged

---

[2] Indeed, although Maniscalco now contends that *Balisok* barred the District Court from awarding even nominal damages to Harris, he and his co-defendants argued at summary judgment that Harris was "at most entitled to nominal damages only," in effect acknowledging that Harris's claim was cognizable under § 1983 and that the Court could lawfully grant nominal damages. *See Harris v. Ricci, et al.*, Case No. 2:08-cv-06282-DRD-MF, Doc. 130-1 at 27.

that it was "clearly established in our case law" that a plaintiff is entitled to nominal damages in a § 1983 action where the plaintiff proves "that the procedures were wrong" but "not necessarily that the result was." *Id.* at 645 (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).[3] In *Balisok*, however, the Court held that in cases where "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment," such claim is not cognizable under § 1983. *Id.* The Court held that the inmate's claim in *Balisok* was not cognizable under § 1983 because the serious procedural defects of which he complained[4] "would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646.

The Supreme Court has, more recently, observed that *Balisok* "demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Indeed, Justice Ginsburg wrote separately in *Balisok*, joined by Justices Souter and Breyer, to observe that

---

[3] We note that Maniscalco argues that the District Court erred in relying on *Carey* because it "travels along a different road entirely" from *Heck* and *Balisok*, was decided pre-*Heck*, and "had nothing to do with the duration of a prisoner's confinement." (*See* Appellee/Cross-Appellant's Br. at 26, 27.) Not only was *Carey* cited favorably in *Balisok*, however, confirming its post-*Heck* application to prisoner § 1983 litigation, it was also cited favorably by Maniscalco and his co-defendants in their summary judgment brief. *See Harris v. Ricci, et al.*, Case No. 2:08-cv-06282-DRD-MF, Doc. 130-1 at 28 (citing *Carey* in support of the argument that "without proof of actual injury, a plaintiff is at most entitled to nominal damages not to exceed one dollar").

[4] In *Balisok*, the inmate argued that he was "completely denied the opportunity to put on a defense through specifically identified witnesses who possessed exculpatory evidence," and that "the cause of the exclusion of the exculpatory evidence was the deceit and bias of the hearing officer himself." 520 U.S. at 646-47.

8

procedural defects of a lesser order, including, for example, "the failure of [the] prison official [] to specify what facts and evidence supported the finding of guilt," do not necessarily imply the invalidity of sanctions and therefore are "immediately cognizable under § 1983." 520 U.S. at 649-50 (Ginsburg, J., concurring) (internal quotation marks omitted).

This is just such a case. The procedural defect of which Harris complained, and which the District Court found (and Maniscalco does not dispute) had been established—namely, Maniscalco's failure to show Harris a copy of his letters in advance of or during the hearing—did not necessarily imply the invalidity of Harris's resulting sanctions. As the District Court found, the sanctions were lawfully imposed despite this procedural defect because Harris conceded that he wrote the letters at issue and because he conceded the basis for another of the disciplinary violations that gave rise to the combined sanctions. Harris's claim is of a significantly different order than the principal defect claimed by the inmate in *Balisok*, where it was alleged that procedural errors resulted from "'deceit and bias on the part of the decisionmaker.'" 520 U.S. at 649 (Ginsburg, J., concurring). Because Harris's claim did not imply the invalidity of his resulting sanctions, the Court did not err in failing to dismiss his claim pursuant to *Balisok*.

B.     Attorney's Fees

The Supreme Court has held that a § 1983 litigant who receives nominal damages may be considered a "prevailing party" under 42 U.S.C. § 1988(b), thus permitting a court to award a reasonable attorney's fee. *See Farrar v. Hobby*, 506 U.S. 103, 114

(1992). As we and other Courts of Appeals have recognized, however, the PLRA, at 42 U.S.C. § 1997e(d)(2), "limits a prevailing prisoner-plaintiff's attorney's fee award to 150 percent of the judgment." *Parker v. Conway*, 581 F.3d 198, 201 (3d Cir. 2009).[5] In addition, the Supreme Court has stated that when a plaintiff recovers only nominal damages because he has failed to prove actual, compensable injury, "the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115.

Section 1997e(d)(2) of the PLRA has been consistently interpreted by our Court and others to cap attorney's fee awards in prisoner litigation to 150 percent of the judgment, which, in this case, would be $1.50. While we have not previously faced a challenge to this fee cap in the context of a nominal damages case, we have elsewhere considered whether it violates equal protection and, in that context, have confirmed that § 1997e(d)(2) imposes such a cap. *See Parker*, 581 F.3d at 204 (holding that the cap does not violate equal protection). *See also Collins v. Montgomery Cty. Bd. of Prison Inspectors*, 176 F.3d 679 (3d Cir. 1999) (en banc) (affirming the judgment of the district court upholding the fee cap where the Court "divided equally on the question of whether the limitation of the fees to 150% of the judgment is constitutional"). Other Courts of

---

[5] Section 1997e(d) sets forth several rules and requirements with respect to attorney's fee awards in prisoner § 1983 litigation. It states that attorney's fees are only available under certain circumstances, described in subsection (d)(1), and, in (d)(2), it states that:

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(2).

Appeals have enforced the cap in the context of nominal damages awards. *See*, *e.g.*, *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (affirming the district court's award of $1.50 in attorney's fees following inmate's nominal damages award); *Keup v. Hopkins*, 596 F.3d 899, 905-06 (8th Cir. 2010) (vacating district court's award of $25,000 in attorney's fees and remanding for reduction of the award to $1.50); *Robbins v. Chronister*, 435 F.3d 1238, 1244 (10th Cir. 2006) (en banc) (vacating district court's award of $9,680 in attorney's fees and remanding for reduction of the award to $1.50); *Boivin v. Black*, 225 F.3d 36, 40-41 (1st Cir. 2000) (vacating district court's award of $3,892.50 in attorney's fees and remanding for reduction of the award to $1.50).

In its decision on reconsideration, the District Court, applying general rules of statutory construction, came to the contrary conclusion that § 1997e(d)(2) does not impose a blanket cap on attorney's fee awards. The Court rejected the various Courts of Appeals decisions applying the fee cap in nominal damages cases as not persuasive and not binding, because they all stemmed from the (in the Court's view, mistaken) presumption that subsection (d)(2) applies to all monetary judgments, not just those in which the fee award is not greater than 150 percent of the judgment.

Despite the Court's thoughtful discussion of § 1997e(d)(2), we reject its analysis for the same reasons stated by the Sixth Circuit in *Walker v. Bain*, 257 F.3d 660 (6th Cir. 2001). In *Walker*, the court persuasively explained why interpreting the second sentence of (d)(2) as the District Court did (*i.e.*, as applying only to awards less than or equal to 150 percent of the judgment) would render it "meaningless":

11

> While Walker's interpretation of § 1997e(d)(2) is consistent with the literal language of the statute, it is inconsistent with the intent of Congress, renders the second sentence of the provision meaningless, and must therefore be rejected. Under Walker's theory: if the fee award is less than 150 percent of the damages, § 1997e(d)(2) applies and defendants are liable for the full amount of the award; if the award of fees is greater than 150 percent of the damages, defendants are liable for the full amount of the award under pre-PLRA law. Under this interpretation, the statute would not have any effect on the court's power to award, or the defendants' obligation to pay, attorney fees. Accordingly, Walker's interpretation renders the second sentence of § 1997e(d)(2) meaningless.

*Id.* at 667. Thus, the court held, the statute "must be read to limit defendants' liability for attorney fees to 150 percent of the money judgment." *Id.*; *see also Shepherd*, 662 F.3d at 607 ("[T]he plain language of § 1997e(d)(2) signals that no attorney's fee award greater than 150 percent of the monetary judgment may be entered against a defendant. To be sure, Congress might have expressed itself more clearly, but we are nevertheless satisfied that this is the most natural reading of the statute."); *Robbins*, 435 F.3d at 1240 ("The statutory language may be inartful, but appellate courts have consistently interpreted the statute to limit a defendant's liability for attorney fees to 150% of the money judgment.").

Because affirming the District Court's award of attorney's fees in this case would conflict with prior statements of this Court, create a circuit split, and, for the reasons stated in *Walker*, render subsection (d)(2) meaningless, we will vacate the Court's order with respect to its attorney's fee award and remand for entry of an award of $1.50.

C.  Injunctive Relief

Following the parties' cross-motions for reconsideration, the District Court, sua sponte, amended its prior decision to grant Harris injunctive relief in the form of a

12

curative disciplinary hearing, despite recognizing that such a hearing "is likely to be nothing but an exercise in etiquette lacking all practical effect," and despite the lack of any request for such a hearing from Harris. (App. at 67.) The Court's only stated rationale was that such relief was warranted "in light of Defendant's motion and Defendant's position" with respect to the PLRA's attorney's fee cap. (*Id*.) From the context of the Court's opinion and its own statements therein, it appears clear that injunctive relief was belatedly awarded solely to preclude application of the PLRA attorney's fee cap. While this issue is likely moot because NJDOC did, in fact, grant Harris a curative hearing pursuant to the Court's order, the Court lacked an adequate basis for its sua sponte decision to order injunctive relief, and we will reverse its order.

IV.

For the reasons stated above, we will affirm the District Court's order granting summary judgment and nominal damages to Harris on his procedural due process claim, vacate its award of attorney's fees and remand for entry of an award not to exceed $1.50, and reverse its order granting injunctive relief.